UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAFARGE NORTH AMERICA, INC.

           Plaintiff,

v.

GRECO BROS. READY MIX
CONCRETE CO., INC., AND
JOSEPH C. GRECO, JR.,

           Defendants.

ECF CASE

CIVIL ACTION NO.

**COMPLAINT**

RECEIVED AUG 20 2007 U.S.D.C. S.D N.Y. CASHIERS

Plaintiff, Lafarge North America, Inc. ("Lafarge"), by and through its attorneys Tofel & Partners, L.L.P., as and for its Complaint against the above-named defendants respectfully alleges as follows:

### JURISDICTION AND VENUE

1. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1332(a)(2); there is complete diversity of citizenship between the parties. The amount in controversy herein exceeds the sum of $75,000, exclusive of interests and costs.

2. Pursuant to 28 U.S.C. §1391(a)(2) venue is proper in this District as a substantial part of the events giving rise to the causes of action occurred in Richmond County, New York.

### THE PARTIES AND ALLEGATIONS
### COMMON TO ALL CAUSES OF ACTION

3. At all relevant times herein mentioned, Lafarge was and still is a corporation duly created, organized and existing under and by virtue of the

{00025375.}

laws of the State of Maryland which maintains its principal places of business in Southfield, Michigan and Herndon, Virginia.

4. Lafarge is a manufacturer and wholesale seller of cement and related construction materials.

5. Upon information and belief, at all relevant times herein mentioned, defendant Greco Bros. Ready Mix Concrete Co., Inc., ("Greco Bros.") was and still is a corporation duly created, organized and existing under and by virtue of the laws of the State of New Jersey which is qualified to do business in New York and maintains its principal place of business in this District. Greco Bros. is a concrete producer and, as such, a customer of Lafarge for the purchase of cement and related products.

6. Upon information and belief, at all relevant times herein defendant Joseph C. Greco, Jr. ("Greco") was and still is a resident of the State of New York, the principal owner of defendant Greco Bros. and an officer thereof.

7. On or about August 14, 2003, defendants Greco Bros. and Greco completed, executed and sent to Lafarge a credit application and personal guaranty which had been requested by Lafarge. The credit application and personal guaranty which defendants completed, signed and returned to Lafarge, provides that:

> "In consideration for sales to Applicant (Greco Bros.) on open account, Applicant and the **Undersigned (Greco) individually and unconditionally guarantees to Lafarge and its successors**, the prompt payment of said account if not paid when due by Applicant. Applicant and the Undersigned further agree to reimburse Lafarge for all attorney's fees, court

> costs, and other charges, if this account should be placed in the hands of an attorney for collection.
>
> Applicant and the Undersigned [further] agree . . . that interest may accrue on all invoiced amounts that are past due at a rate per annum equal to the lesser of (i) 18% or (ii) the maximum rate allowed by applicable state law (if applicable state law does not provide for a maximum rate of interest, the maximum rate shall be 18%) until paid in full."

A copy of the completed credit application, containing Greco's personal guaranty and the aforementioned terms and conditions of Lafarge's sales of its cement, is annexed hereto as Exhibit "A".

8. During the period beginning in or around September, 2006 and continuing through May, 2007, at Greco Bros. specific instance and request, Greco Bros. purchased from Lafarge, and Lafarge sold and delivered to and for the benefit of Greco Bros., for use by Greco Bros., quantities of cement having an aggregate agreed principal price and reasonable value $148,527.52 against which Lafarge issued credits, price rollbacks and other discounts totaling $30,813.72, leaving a balance due of $117,713.81 (the "Principal Amount"), for which payment has not been made. A statement of Greco Bros. account with Lafarge is attached hereto as Exhibit "B".

9. Due to Greco Bros. failure to make timely payment to Lafarge of the said Principal Amount, in accordance with Lafarge's prevailing credit terms, finance charges have accrued, and continue to accrue on the Principal Amount.

10. No part of the Principal Amount, or the finance charges thereon, have been paid by defendants to Lafarge, despite due demand therefore.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

11. Lafarge repeats, reiterates and realleges each and every allegation contained in paragraphs 1-10 hereof as if fully set forth herein at length.

12. By reason of the foregoing, Greco Bros. has materially breached the Agreement with, and is liable to, Lafarge for the principal sum of $117,713.81, plus all finance charges which have and hereafter shall accrue thereon, and the attorney's fees and costs Lafarge has incurred and will hereafter incur in collecting the sums due.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Conversion)

13. Lafarge repeats, reiterates and realleges each and every allegation contained in paragraphs 1-10 hereof as if fully set forth herein at length.

14. Greco Bros. receipt, retention and use of Lafarge's materials, without payment therefore, constitutes conversion. By reason of the foregoing, Greco Bros. is liable to Lafarge in the principal sum of $117,713.81 plus all finance charges which have accrued and hereafter shall accrue thereon and the attorney's fees and costs Lafarge has incurred and will hereafter incur in collecting the sums due.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Account Stated)

15. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-10 hereof as if fully set forth herein at length.

16. Lafarge made and delivered to Greco Bros. a statement or statements of Greco Bros. account with Lafarge, which Greco Bros. retained without making any objection thereto.

17. By reason of the foregoing, Greco Bros. is liable to Lafarge in the amount of $117,713.81, plus finance charges, any interest and attorneys' fees and costs.

### AS AND FOR A FOURTH CAUSE OF ACTION
#### (Personal Guaranty)

18. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs 1-10 hereof as if fully set forth herein at length.

19. On or about August 14, 2003, in order to induce Lafarge to extend credit to Greco Bros., defendant Greco executed and delivered to Lafarge, *inter alia*, his personal guaranty of payment (the "Guaranty") pursuant to which he guaranteed the due and timely payment to Lafarge of the obligations of Greco Bros.

20. By reason of the foregoing, defendant Joseph C. Greco, Jr., is justly and truly indebted to Lafarge in the principal amount of $117,713.81, plus all finance charges which have accrued and hereafter shall accrue thereon and the attorneys' fees and costs Lafarge has incurred and will hereafter incur in collecting the sums due.

WHEREFORE, Lafarge demands judgment as follows:

(i) on its first, second and third causes of action, damages against defendant Greco Bros. in the principal amount of $117,713.81, together with finance charges which have accrued and hereafter

           shall accrue thereon, and the attorneys fees and costs incurred by Lafarge herein;

(ii)    on its fourth cause of action, damages against defendant Joseph C. Greco, Jr., in the principal amount of $117,713.81, together with all finance charges which have accrued and hereafter shall accrue thereon, and the attorneys' fees and costs incurred by Lafarge herein; and

(iii)   on each and every cause of action, such other and further relief as the Court may deem just and proper.

Dated:    New York, NY
            August 20, 2007

                                      TOFEL & PARTNERS, LLP

                                      By: _____
                                            Lawrence E. Tofel (LET-8631)
                                      800 Third Avenue
                                      New York, New York 10022
                                      (212) 752-0007

                                      *Attorneys for Plaintiff, Lafarge North America, Inc.*

**Exhibit A**

**LAFARGE** #2803828
NORTH AMERICA

Lafarge North America by:
Frank Lore'
Salesman
Don Ingerson
Sales/Area Manager
Chuck Pilluvant
Credit Manager

Cement

## CREDIT APPLICATION AND AGREEMENT

APPLICANT: Corporate or Company Name __Greco Bros. Ready Mix Concrete Co.__
Subsidiary of _____ Location __87-13 Rockaway Blvd Ozone Park NY__ / 381 Hemlow Ave Bklyn
Applicant Street Address _____ Zip Code _____
Applicant Billing Address __87-13 Rockaway Blvd Ozone Park NY__ Zip Code __11416__
Applicant Federal Tax I.D.# __11-1869396__ Phone # __718-849-5200__ Fax # __718-843-4076__
Estimated quantity to be purchased from Lafarge North America (Lafarge) per month __30,000.00__
Kind of Business __Ready Mix__ How Long in Business? __45 yrs__

Proprietorship ___ Partnership ___ Corporation _X_ Other ___

### PRINCIPAL'S NAMES AND POSITIONS:

Joseph C. Greco Sr. — Presi d T
Joseph C. Greco Jr. — Sect.
Anthony Greco Sr. — V.P.

### BANK REFERENCE:

Bank Name __JP Morgan Chase__
Account Officer __Betty Schick__ Account Number __903-500-34166-5__
Address __96-19 101st Ave Ozone Park__
Address __NY 11416__
Telephone a/c __718-322-6001__

The Applicant hereby authorizes the release of credit information to Lafarge by any Trade or Bank reference listed herein.

### TRADE REFERENCES:

| Name | City | State | Phone Number |
|---|---|---|---|
| Essex Cement | | | 973-344-8941 |
| Haven Transport - Sand | | | 631-325-8108 |
| Tilcon of NY | | | 845-358-4500 |
| NY Sand + Stone | | | 718-832-7761 |

Applicant and guarantor shall submit a current financial statement with this Credit application and annually thereafter. All signatories below execute this agreement on behalf of Applicant as well as individually.

FINANCIAL STATEMENT ATTACHED ___ YES ___ NO (Application may not be considered until financial statement provided.)

The undersigned hereby authorizes Lafarge to conduct an investigation of Applicant's credit history, and the credit history of any individual guarantor, through credit reporting agencies of its choice, references given or other sources that it considers desirable, with the understanding that its decision to grant or deny credit may be based in whole or in part on information obtained in this investigation. Lafarge reserves the right to furnish payment experience to credit reporting agencies such as TRW and Dun & Bradstreet.

THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS OF THE PARTIES HEREUNDER AND UNDER ALL INVOICES SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAW OF THE STATE IN WHICH THE OFFICE OF LAFARGE INDICATED ON THE INVOICE IS LOCATED, WHICH LAW IS APPLICABLE TO CONTRACTS WHOLLY EXECUTED, DELIVERED AND PERFORMED IN SUCH STATE. EACH INVOICE FOR AN ORDER PLACED BY APPLICANT IS DEEMED TO BE MADE OR CONSUMMATED AND IS PERFORMABLE IN THE COUNTY AND STATE IN WHICH THE OFFICE OF LAFARGE INDICATED ON THE INVOICE IS LOCATED. APPLICANT AND GUARANTOR AGREE TO AND ACKNOWLEDGE THE TERMS AND CONDITIONS SET FORTH IN THIS AGREEMENT.

IN CONSIDERATION FOR SALES TO APPLICANT ON OPEN ACCOUNT, THE UNDERSIGNED INDIVIDUALLY AND UNCONDITIONALLY GUARANTEES TO LAFARGE AND ITS SUCCESSORS, THE PROMPT PAYMENT OF SAID ACCOUNT IF NOT PAID WHEN DUE BY APPLICANT. APPLICANT AND THE UNDERSIGNED FURTHER AGREE TO REIMBURSE LAFARGE FOR ALL ATTORNEY'S FEES, COURT COSTS, AND OTHER CHARGES, IF THIS ACCOUNT SHOULD BE PLACED IN THE HANDS OF AN ATTORNEY FOR COLLECTION.

IN CONSIDERATION FOR THE SALES TO APPLICANT ON OPEN ACCOUNT, APPLICANT AND THE UNDERSIGNED AGREE THAT PAYMENT FOR ALL MATERIALS INVOICED IS DUE ON OR BEFORE THE LAST DAY OF THE MONTH NEXT FOLLOWING THE MONTH OF SHIPMENT OF THE MATERIALS AND SHALL BE MADE AT THE OFFICE OF LAFARGE INDICATED ON THE INVOICE. IT IS FURTHER AGREED THAT INTEREST MAY ACCRUE ON ALL INVOICED AMOUNTS THAT ARE PAST DUE AT A RATE PER ANNUM EQUAL TO THE LESSER OF (i) 18%; OR (ii) THE MAXIMUM RATE ALLOWED BY APPLICABLE STATE LAW (IF APPLICABLE STATE LAW DOES NOT PROVIDE FOR A MAXIMUM RATE OF INTEREST, THE MAXIMUM RATE SHALL BE 18%) UNTIL PAID IN FULL.

Date __8/19/03__                                       Signature _____

## TERMS AND CONDITIONS OF SALE

**1. Acceptance of Purchase Order:** Sellers acceptance of Buyers purchase for the products described on the reverse hereof (the □Product□) is expressly limited to the terms and conditions contained herein, and Seller hereby rejects any and all additional or different terms proposed by Buyer, orally or in writing, including terms contained in Buyers Purchase Order or Shipping Order, unless specifically agreed to in writing by Seller. Buyer agrees to these terms and conditions.

**2. Terms of Payment:** A prompt payment discount in the amount stated on the invoice will be allowed on payments received by the 10th of the month for shipments invoiced during the previous month, provided no past due balances are outstanding at such time. Invoices not paid by the 10th of the month are due and payable in full on the last day of the month following the month of shipment. Invoices not paid by such due date shall be considered past-due and may bear interest at the rate of one and one-half percent (1.5%) per month (eighteen percent (18%) per annum) or the maximum rate permitted by applicable law, if lower, thereafter until paid. Buyer agrees to reimburse Seller for all reasonable collection costs, attorneys fees and expenses, court costs and other charges incurred by Seller if the account created hereunder is not paid when due. All invoices are payable at Sellers office as shown by the address on the invoice.

**3. Credit:** If Seller reasonably believes that Buyers ability to pay is doubtful, Seller reserves the right to require payment in advance or satisfactory security or guaranty that the invoice amount will be paid promptly when due. If Buyer fails to deliver such security or guaranty, fails to comply with any other term of sale or fails to make a payment when due, Seller reserves the right to cancel all unfilled orders without notice and Buyer shall remain liable for all unpaid accounts, including service charges. Buyer represents that it is solvent and capable of paying for the Product.

**4. Prices:** Prices quoted are subject to any sales, use or production tax that may be applicable at the time of shipment. If the prices quoted herein include transportation charges, such prices shall be adjusted to reflect applicable changes in the transportation charges and any taxes on transportation charges.

**5. Shipments:** Title and Risk of Loss: Buyer may specify whether goods will be delivered to Buyer at Sellers facility or at Buyers facility.

(a) If goods are to be delivered to Buyer at Sellers facility, (i) all cement and cementitious products shall be F.O.B. Sellers facility, (ii) title and risk of loss or damage shall pass to Buyer upon delivery to Buyer (or pick up by a carrier designated by Buyer) at Sellers facility, and (iii) any claims for shipping loss or damage must be made by Buyer directly to the carrier.

(b) If goods are to be delivered to Buyer at Buyers facility, (i) all cement and cementitious shall be F.O.B. Buyers facility and (ii) title and risk of loss or damage shall pass to Buyer upon delivery to Buyers facility. Shipments will be made from points and by carriers and routes selected by Seller. All shipping dates communicated to Buyer are estimates and dates of delivery are not guaranteed. Demurrage and detention charges at destination shall be borne by Buyer. Rail and truck shipments will be subject to rates, rules, and regulation contained in the applicable tariffs of the carriers on date of shipment. Carriers or Sellers truck scale weights and/or carriers stenciled tare weights will be used, subject to applicable tariffs, and shall be conclusive.

(c) The Product relating to these terms and conditions may be supplied by Lafarge North America Inc., Lafarge Midwest, Inc., Mineral Solutions, Inc. or another affiliate of Lafarge North America Inc. The entity that actually supplies the Product will be considered the Seller. Lafarge North America Inc. through its Shared Services Center acts as collection agent for its affiliates pursuant to service agreements between these companies.

**6. Cancellation:** Buyer may not cancel or terminate for convenience, or direct suspension of manufacture, except with the written consent of Seller and payment of Sellers cancellation charges. If Buyer requests cancellation of a delivery after a carrier has departed from Sellers plant, Seller shall endeavor to reconsign to another consignee. If Seller is able to reconsign, the cost of reconsignment shall be borne by Buyer. If Seller is unable to reconsign, all carrier charges from and returning to the Sellers plant shall be borne by Buyer.

**7. Buyers Acceptance of Goods:** Buyer shall have the right and obligation to inspect the Product upon receipt, and such Product shall be deemed in conformity with the contract and accepted by Buyer unless written notice of rejection, revocation of acceptance or breach of warranty, as the case may be, is received by Seller within thirty (30) days after Buyers receipt of the Product. All claims must be supported by Buyers and Carriers written acknowledgements as to loss, shortage, or damage. ALL CLAIMS NOT SUBMITTED IN STRICT COMPLIANCE WITH THIS PROVISION, WHICH IS RECOGNIZED BY THE PARTIES AS REASONABLE, SHALL BE CONCLUSIVELY AND FINALLY WAIVED AND FOREVER BARRED.

**8. Specifications:** Unless otherwise indicated in materials furnished by Seller to Buyer, Sellers cements and cementitious products, when shipped will meet the requirements of the current specifications of the General Services Administration (or any successor thereto of the United States Government, if any) or the Standard Specification for Cements and Cementitious products as adopted by the American Society for Testing Materials (ASTM), if applicable, for the type of cement and cementitious products specified and supplied. The term Trinity Special Oil well (Class H) Cement, Trinity Lafarge (Class H) Cement, Lafarge Class H Cement, and any other API designation of cement used herein, means cement so described has been manufactured to conform with criteria of the American Petroleum Institute. Such cement will generally conform to all API mandatory test requirements. However, due to manufacturing and testing tolerances such cement may show variations from API specifications between production cycles.

**9. Warranty:** EXCEPT AS PROVIDED IN THE IMMEDIATELY PRECEDING PARAGRAPH, SELLER MAKES NO REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED (WHETHER WRITTEN, ORAL, STATUTORY, OR ARISING BY PREVIOUS COURSE OF DEALING OR USAGE OF TRADE), INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE. SELLER MAKES NO GUARANTY OF FINISHED WORK WHATSOEVER.
Any product which is not manufactured by Seller is not warranted by Seller, and shall be covered only by the express warranty, if any, of the manufacturer thereof.

SELLER MAKES NO WARRANTIES, EXPRESSED OR IMPLIED, WITH RESPECT TO ITS UNPROCESSED FLY ASH, BOTTOM ASH AGGREGATE OR COAL COMBUSTION PRODUCTS. SUCH PRODUCTS ARE SOLD □AS IS□ AND BUYER TAKES SUCH PRODUCTS WITH ALL FAULTS AND WITHOUT ANY WARRANTIES. NO AGENT, REPRESENTATIVE OR EMPLOYEE OF SELLER IS AUTHORIZED TO MAKE ANY WARRANTIES WITH RESPECT TO SUCH PRODUCTS.

**10. Exclusive Remedy:** BUYERS EXCLUSIVE REMEDY FOR BREACH OF ANY WARRANTY HEREUNDER IS THE DELIVERY BY SELLER OF ADDITIONAL QUANTITIES OF THE PRODUCT IN REPLACEMENT OF THE NONCONFORMING PRODUCT OR THE REFUND OF THE PURCHASE PRICE FOR THE PRODUCT WHICH IS COVERED BY THIS WARRANTY, AT SELLERS OPTION. Buyer shall pay all installation, removal and transportation costs (other than transportation of replacement product to the original stated destination, if any) incurred in effecting performance of this warranty. Buyer and Seller agree that the exclusive remedy provided for in these terms and conditions does not cause the contract to fail of its essential purpose. SELLER SHALL HAVE NO OTHER OBLIGATION OR LIABILITY FOR DAMAGES TO BUYER OR ANY OTHER PERSON OF ANY TYPE, INCLUDING, BUT NOT LIMITED TO, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, LOSS OF PROFITS OR OTHER COMMERCIAL LOSS, OR ANY OTHER LOSS, DAMAGE OR EXPENSE ARISING OUT OF OR IN CONNETION WITH THE USE, LOSS OF USE, NONPERFORMANCE OR REPLACEMENT OF THE PRODUCT, whether such loss, damage or expense arose out of (i) a breach of any warranty or any other provision of the contract between Buyer and Seller, (ii) any negligence or other tort liability on the part of Seller, (iii) Sellers strict liability, or (iv) any other legal theory. Seller shall have no obligation as to any Product which has been improperly stored or handled, or which has not been properly maintained by any other person other than Seller.

**11. Authority of Buyers Representatives:** Seller shall be entitled to assume that orders given and documents or receipts executed by employees or agents of Buyer customarily relied upon shall have been validly authorized by Buyer and that Buyer will be responsible therefore, unless Seller is otherwise informed in writing in advance.

**12. Force Majeure:** Seller shall not be liable to Buyer or any other person for Sellers failure to perform hereunder or its delay in manufacturing, shipping or delivering the Product due to any contingency beyond its control, including but not limited to acts of God, fires, floods, wars, insurrections, riots, civil disturbance, sabotage, accidents, strikes, labor disputes, lock-outs, shortages of supplies or material, carriers or suppliers delays or defaults, inability to procure materials from usual sources of supply or requirements or limitations of a governmental authority of any kind. Upon the occurrence of any such event, Seller may, at its option, delay shipment or performance, or apportion existing supplies among customers or cancel the contract without any liability to Buyer for such action; provided, however, that Buyer agrees to pay to Seller upon its standard terms the purchase price of the Product delivered in accordance with the contract. In no event shall Seller be obligated to purchase material from others in order to enable it to deliver Product to Buyer hereunder.

**13. Modifications; Assignment; Waiver:** Without Sellers express prior written consent, (i) no modification or amendment of the contract between Seller and Buyer, including these terms and conditions, shall be binding upon Seller and (ii) Buyer may not assign any of its rights or obligations under the contract by operation of law or otherwise. Sellers failure to enforce any term or condition or to exercise any of its right s shall not constitute a waiver or relinquishment of any such term, condition or right and shall not affect Sellers right to enforce strict compliance with the contract.

**14. Indemnification:** Seller shall not be liable to Buyer for, and Buyer agrees that it will indemnify and hold Seller harmless from and against, any damage, injury of expense (including, without limitation, penalties and fines assessed by governmental authorities and reasonable attorneys fees and expenses) incurred by or asserted against Seller by reason of, in whole or in part, any act or omission on the part of Buyer or any of its directors, officers, employees or agents. Such acts or omissions may include, but are not limited to, failure to convey the warnings and safety information required by law, including the warnings and safety information contained herein.

**15. Equal Opportunity Employer:** The `Equal Opportunity Clause' as prescribed by Federal Executive Order and Regulation is incorporated herein by reference and is made a part of this contract as if fully set forth herein.

**16. Fair Labor Standards Act:** Seller hereby certifies that the Product sold pursuant to these terms and conditions is manufactured in compliance with all applicable requirements of the Fair Labor Standards Act, as amended, and all applicable Regulations and Orders of the United States Department of Labor.

WARNING: Portland cement and cementitious products including but not limited to slag cement, fly ash and blends of such material are collectively referred to as cement products. Cement products and coal combustion products, and products made using coal combustion products, may cause severe burns and injuries to the skin, eyes, lungs and digestive system. Avoid contact with skin and eyes. Wash exposed skin with soap and water. In case of eye contact, flush eyes immediately and thoroughly, and in both instances consult a physician immediately. Breathing cement product dust or coal combustion products may cause nose, throat or lung irritation or choking. Prolonged exposure to cement and coal combustion products may cause lung injury, including silicosis and such products may contain crystalline silica, a substance that may cause lung cancer. If breathing becomes difficult due to exposure, remove exposed person to fresh air and consult a physician. Keep out of the reach of children. Follow directions and warnings on product packaging. A Material Safety Data Sheet (MSDS) with complete safety information is available from the supplier. **Buyer agrees to convey this warning and to provide copies of all appropriate MSDSs to all persons who may purchase, use or come into contact with cement products, coal combustion products and products using coal combustion products.**

**Exhibit B**



CEMENT DIVISON

## STATEMENT OF ACCOUNT

| STATEMENT DATE | STATEMENT # |
|---|---|
| 07/31/07 | 193090 |
| CUSTOMER NO. | PAGE |
| 277791 | 1/ 1 |

**BILL TO:** GRECO BROS READY MIX CONC CO
87-13 ROCKAWAY BLVD
OZONE PARK,NY
11416-2194

**REMIT TO:** LAFARGE NORTH AMERICA #13682
PO BOX 13682
NEWARK,NJ
07188

| Date | Invoice# | Receipt# | Transaction | Reference | Amount | Payment | Balance |
|---|---|---|---|---|---|---|---|
| 09/27/06 | 1363805 | | Invoice | | 5,219.76 | .00 | 5,219.76 |
| | | | Month Total | | 5,219.76 | .00 | 5,219.76 |
| | | | Month Total | | .00 | .00 | .00 |
| 12/20/06 | 1578493 | | Credit Memo | HABITAT DONATION | (113.44) | .00 | (113.44) |
| | | | Month Total | | (113.44) | .00 | (113.44) |
| 01/10/07 | 1615334 | | Invoice | | 44,544.93 | .00 | 44,544.93 |
| 01/17/07 | 1628495 | | Invoice | | 37,444.08 | .00 | 37,444.08 |
| 01/24/07 | 1640814 | | Invoice | | 30,471.84 | .00 | 30,471.84 |
| | | | Month Total | | 112,460.85 | .00 | 112,460.85 |
| 02/14/07 | 1695524 | | Credit Memo | | (21,652.34) | .00 | (21,652.34) |
| 02/14/07 | 1697832 | | Invoice | | 23,214.88 | .00 | 23,214.88 |
| 02/24/07 | 1724238 | | Credit Memo | PRICE ROLLBACK | (4,596.16) | .00 | (4,596.16) |
| | | | Month Total | | (3,033.62) | .00 | (3,033.62) |
| 05/09/07 | 2275928 | | Credit Memo | | (2,203.64) | .00 | (2,203.64) |
| 05/09/07 | 2279241 | | Invoice | | 2,617.53 | .00 | 2,617.53 |
| 05/16/07 | 2334266 | | Credit Memo | | (2,248.14) | .00 | (2,248.14) |
| 05/16/07 | 2338124 | | Invoice | | 5,014.51 | .00 | 5,014.51 |
| | | | Month Total | | 3,180.26 | .00 | 3,180.26 |
| | | | Total : | USD | 117,713.81 | .00 | 117,713.81 |

**TOTAL BALANCE DUE:** $ 117,713.81

For assistance with billing questions, please call the Lafarge Northeast Region Customer Value Center at 1-800-631-2777 - Press 2.